UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SEGUNDO S.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

1:20-CV-1411-LJV
DECISION & ORDER

---

On October 1, 2020, the plaintiff, Segundo S. ("Segundo"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On September 2, 2021, Segundo moved for judgment on the pleadings, Docket Item 14; on January 31, 2022, the Commissioner responded and cross-moved for

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Segundo applied for both Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Docket Item 10 at 252, 259. One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

judgment on the pleadings, Docket Item 16; and on March 11, 2022, Segundo replied, Docket Item 17.

For the reasons stated below, this Court grants Segundo's motion in part and denies the Commissioner's cross-motion.[3]

## **BACKGROUND**

Segundo filed for benefits on December 12, 2013,[4] Docket Item 10 at 252, 259, alleging disability beginning on June 12, 2013, *id.* at 252, 314.  On April 11, 2016, an ALJ denied his claim*, id.* at 31-52, and on August 5, 2017, the Appeals Council denied Segundo's request for review of the ALJ's decision, *id.* at 8-13.  Segundo then sought review in this Court, and on June 28, 2019, United States Magistrate Judge Jonathan W. Feldman vacated the Commissioner's decision and remanded the matter for further administrative proceedings.  Docket Item 11 at 109-122.

On remand, the Appeals Council sent the case to a different ALJ, *id.* at 128, who conducted a hearing on March 2, 2020, Docket Item 10 at 1084.  At that hearing, a medical expert, John Kwock, M.D., testified about Segundo's physical limitations based on Dr. Kwock's review of the medical record.  *Id.* at 1097.  More specifically, Dr. Kwock opined that Segundo suffers from bilateral "residual mild degenerative changes in the

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

[4] The record is unclear about when Segundo applied for benefits.  The Disability Determination Explanation states that he filed his initial claim on November 12, 2013*, see* Docket Item 10 at 109, but the applications are both dated December 12, 2013.  *See id.* at 252, 259.  This Court assumes that the latter dates are correct.

shoulder girdles," "mild degenerative disc and degenerative joint disease [] in the lumbar spine," and "minimal degenerative changes" in the right hip, *id.* at 1098, none of which "impart material impairment of functionality," Docket Item 11 at 3.  Dr. Kwock also found that Segundo once had "a shoulder tendonitis in both shoulders" and an "olecranon bursitis in the left elbow" but opined that those impairments had resolved by the date of the hearing.  Docket Item 10 at 1098.

The ALJ concluded that Segundo was not disabled between the alleged onset date of June 12, 2013, and the date of her decision on June 3, 2020, and she therefore denied Segundo's application for benefits.  *Id.* at 1050-75.  Segundo then sought this Court's review for a second time.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a

3

reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Segundo argues that the ALJ erred in two ways. Docket Item 14-1. First, he argues that the ALJ improperly evaluated the medical opinions in formulating his residual functional capacity ("RFC").[5] Docket Item 14-1 at 21. Second, he contends that the ALJ "failed to abide by the directives of this Court and the Appeals Council." *Id.* at 26. Because his case has been pending for such a long time, Segundo also asks this Court to consider imposing a time limit on further proceedings. *Id.* at 28.

This Court agrees that the ALJ erred and, because that error was to Segundo's prejudice, remands the matter to the Commissioner. Because the ALJ must reconsider Segundo's RFC at step four, however, this Court declines to impose a time limit on further administrative proceedings.[6]

---

[5] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. §§ 404.1545, 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

[6] Although the Second Circuit has instructed that district courts may, in appropriate circumstances, set a time limit for reconsideration of a claim, *see, e.g.*, *Butts v. Barnhart*, 416 F.3d 101 (2d Cir. 2005), that remedy is not appropriate here. In *Butts*, the Second Circuit found that a 120-day time limit was appropriate when the district court was "reviewing an ALJ's decision at step five, rather than step four, of the five-step inquiry." 416 F.3d at 103. Here, the Court remands because the ALJ erred in

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. §§ 404.1527(c); 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  See id. §§ 404.1527(a)(2), (c)(2); 416.927(a)(2), (c)(2); see also Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight[7] so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether

---

formulating the RFC at step four, and remand will require more significant review and evaluation.  For that reason, this Court declines to set a time limit.  But the Court notes that Segundo applied for benefits more than eight years ago, and it therefore urges the Commissioner to proceed expeditiously.

[7] Because Segundo's claim was filed before March 27, 2017, the so-called "treating-physician rule" applies in this case.  See Montes v. Comm'r of Soc. Sec., 2019 WL 1258897, at *2 n.4 (S.D.N.Y. Mar. 18, 2019) ("The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017.  The plaintiff filed [his] claim before March 27, 2017.  Thus, the treating[-]physician rule under the previously existing regulations applies.").

the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

In formulating Segundo's RFC,[8] the ALJ gave "little weight" to the December 2014[9] and November 2015[10] opinions of Segundo's treating physician, Scott Hartman, M.D., because "the debilitating degree of functional limitation [Dr. Hartman] described

---

[8] The ALJ determined that Segundo had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following exceptions: Segundo "must have the opportunity to change position every two hours for up to five minutes. He can never climb ladders, ropes, or scaffolds. He can occasionally crouch, kneel, or crawl. He can occasionally reach overhead and frequently reach in other directions, bilaterally. He can frequently push and pull, and frequently operate foot pedals. He can never have more than occasional exposure to hazards, such as open waters or unprotected heights. He can tolerate up to occasional exposure to extreme cold, extreme heat, wetness, humidity, and airborne irritants." Docket Item 10 at 1055.

[9] Dr. Hartman's opinion of December 2, 2014, was part of a "physical assessment for determination of employability." Docket Item 10 at 535. In that assessment, Dr. Hartman found that Segundo suffers from "chronic severe shoulder [and] back pains" *id.* at 536, and he concluded that Segundo is "very limited" in walking, standing, sitting, pushing, pulling, bending, lifting, and carrying, *id.* at 538.

[10] Dr. Hartman completed a "physical residual functional capacity questionnaire" on November 10, 2015. Docket Item 10 at 523. In that questionnaire, Dr. Hartman opined that Segundo's "bilateral chronic back, shoulder, [and] elbow pain" were exacerbated "by lifting [and] activity." *Id.* He therefore determined that Segundo could not "lift and carry" any weight, *id.* at 525, and could never twist, stoop, bend, crouch, squat, climb ladders, or climb stairs, *id.* at 526. He found that Segundo could not do bilateral manipulations with his fingers, reach with his arms (including overhead), or grasp, turn, or twist objects with his hands at all during a workday. *Id.* He also opined that Segundo's impairments would likely cause "'good days and 'bad days'" and that Segundo would be absent from work more than four days a month "as a result of [his] impairments or treatment." *Id.*

finds little support in contemporaneous treatment records and is inconsistent with the totality of the evidence."  Docket Item 10 at 1068.  On the other hand, the ALJ gave "significant weight" to the opinion of Dr. Kwock, a consulting physician who never even saw Segundo but only reviewed his medical records.  *Id.* at 1067.

In assigning less-than-controlling weight to Dr. Hartman's opinions, the ALJ did not comply with the procedural mandates of the treating-physician rule.  For example, she did not explicitly address the second *Burgess* factor—"the amount of medical evidence supporting [Dr. Hartman's] opinion[s]."  *See Greek*, 802 F.3d at 375.  And while she said generally that Dr. Hartman's opinions were inconsistent with "contemporaneous treatment records" and "the totality of the evidence," Docket Item 10 at 1068, she did not explain the inconsistencies or otherwise address "the consistency of the opinion[s] with the remaining medical evidence," *see Greek*, 802 F.3d at 375.

In fact, the ALJ ignored the consistencies between Dr. Hartman's findings and other medical opinions in the record.  For example, Dr. Hartman and Harbinder Toor, M.D., both opined that Segundo could never reach overhead.  *Compare* Docket Item 10 at 526 (Dr. Hartman found Segundo could reach his arms (including overhead) for "0%" of "an 8-hour working day"), *with* Docket Item 11 at 387 (Dr. Toor found Segundo could "[n]ever" reach overhead).  But the ALJ said nothing about the consistency of those opinions with each other or the evidence that supported them.  And contrary to both those opinions, the ALJ found that Segundo "can occasionally reach overhead."  *See* Docket Item 10 at 1055.

The opinions of Nurse Practitioner ("NP") Luis Berrios and of NP Carolyn Braddock regarding Segundo's postural limitations likewise were consistent with Dr.

7

Hartman's findings.  *Compare* Docket Item 10 at 538 (Dr. Hartman opined Segundo was "very limited"—that is, able to perform for only one to two hours in an eight-hour workday—in walking, standing, sitting, pushing, pulling, bending, lifting, and carrying), *with id.* at 543 (NP Braddock opined Segundo was "very limited" in walking, standing, sitting, pushing, pulling, bending, lifting, and carrying), *and id.* at 548 (NP Berrios opined Segundo was "very limited" in pushing, pulling, bending, lifting, and carrying).  Again, the ALJ said nothing about that consistency.  And even worse, the fact that the ALJ rejected the opinions of NP Berrios and NP Braddock for "the reasons stated . . . with respect to Dr. Hartman's opinion," *id.* at 1069, 1070, suggests that those opinions were consistent in ways that the ALJ simply ignored or chose not to address.

The ALJ seems to have relied largely on the testimony of the consultant, Dr. Kwock, to discount Dr. Hartman's treating source opinions.  But relying on the opinion of a consultant who saw a claimant once—or, as here, never even laid eyes on him professionally—at the expense of the opinion of a treating physician is problematic.  *See Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 336 (W.D.N.Y. Feb. 12, 2008) ("To give [the consulting physician's] one[-]time examination more weight than [the treating physician's] opinions representing patient contact and treatment over an extensive period of time was clear error.").  And Dr. Kwock did not have the benefit of even a one-time examination, having only reviewed the records.

The ALJ also insufficiently addressed the first *Burgess* factor: "the frequency, length, nature, and extent of treatment."  *See Greek*, 802 F.3d at 375.  Dr. Hartman

treated Segundo regularly between 2011 and 2015[11] and therefore likely had "a detailed, longitudinal picture of [Segundo's] medical impairments," *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ paid lip service to that factor, mentioning Dr. Hartman's treatment history and "longitudinal familiarity with the claimant," Docket Item 10 at 1068, but she did not address the persuasive impact of that treatment history.  That is especially troubling because Segundo suffered from a multitude of chronic and overlapping health conditions, and a physician familiar with those conditions over time might well have insight that a one-time examiner—or someone who simply reviews the paper record—does not have.  *Cf. Colgan v. Kijakazi,* 22 F.4th 353, 364 (2d Cir. 2022) (finding the ALJ improperly discounted the opinion of claimant's treating physician based on consultative opinions that did not accurately depict the nature and severity of claimant's chronic headaches).

     The ALJ's "failure to 'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Hartman's treating source opinions therefore was "a procedural error."  *Estrella*, 925 F.3d at 96 (quoting *Selian*, 708 F.3d at 418).  And "because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to Dr. Hartman's opinions.  *See id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand

---

[11] Dr. Hartman indicated that he had been treating Segundo "every 1-2 mo[nths]" for three years as of November 2015, Docket Item 10 at 523, but stated in his report of December 2014 that the treatment relationship had begun in 2011, *id.* at 535.

where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.[12]

On the contrary, in discounting Dr. Hartman's treating opinions, the ALJ also substituted her own lay opinion for that of a medical expert. In rejecting what she called Dr. Hartman's "extreme limitations," Docket Item 10 at 1068, for example, the ALJ asserted that "[i]f the claimant suffered from the debilitating degree of functional limitation that Dr. Hartman described, one would expect to see greater limitation in daily activities, and one would not expect the claimant to attempt to shovel snow or perform yard work," *id.* at 1069. But the ALJ noted that according to Dr. Hartman, Segundo could spend an hour or two each day "walking, . . . pushing/pulling/bending, . . . and lifting/carrying,"[13] *see id.* at 1068, findings that might well be consistent with the ability to occasionally shovel snow, mow the lawn, and rake leaves. And "[t]here was no proof that [Segundo] engaged in any of these activities for sustained periods comparable to

---

[12] Because the ALJ found that Segundo had the RFC to do more than Dr. Hartman opined he could do, the ALJ's error was not harmless. For example, as noted above, Dr. Hartman and Dr. Toor both opined that Segundo could not reach overhead, Docket Item 10 at 526; Docket Item 11 at 387, but the ALJ found that he could, Docket Item 10 at 1055. Likewise, the ALJ found that Segundo needed to change position every two hours, *id.*, but Dr. Hartman opined that he needed to do so far more frequently, *see, e.g., id.* at 524-25.

[13] To the extent that this opinion may have been inconsistent with other findings by Dr. Hartman, such as the finding—noted by the ALJ—that Segundo "could never lift any weight," *see* Docket Item 10 at 1068, it was incumbent on the ALJ to obtain clarification. *See Cabassa v. Astrue*, 2012 WL 2202951, at *10 (E.D.N.Y. June 13, 2012) ("[I]f an ALJ believes that a treating physician's opinion lacks support or is internally inconsistent, [s]he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor.") (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

those required to hold a [] job."  See *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).

In fact, Segundo "report[ed] difficulty with light house work [sic]," Docket Item 11 at 767; likewise, he complained that after he shoveled snow it was "[p]ainful to raise [his] shoulder, lift up groceries, etc.," *id.* at 374.  And as the Second Circuit has observed, "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals,"—here, for example, shoveling snow in exchange for rent, *see id.* at 374—"it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working."  *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989)) (internal quotation marks omitted).

The ALJ also discounted Dr. Hartman's opinion because it was internally inconsistent: she noted that Dr. Hartman opined that Segundo "would need to walk around for 10 minutes at a time, every 10 minutes," and she found that to be inconsistent with Dr. Hartman's opinion that Segundo "could walk for less than two hours in an eight-hour day."  *See* Docket Item 10 at 1069.  But those opinions were given in the context of working during a workday, *see id.* at 524-25, and they are inconsistent only if one assumes that Segundo can, in fact, work.  In other words, opining that someone can work but needs to walk for ten minutes every ten minutes and can walk a total of less than two hours in a workday may not make sense; but opining that someone needs to walk for ten minutes every ten minutes and cannot walk for more than two hours a day might also mean simply that the person is incapable of working.

11

Moreover, if the ALJ found Dr. Hartman's opinions to be ambiguous or confusing, the ALJ was obligated to recontact Dr. Hartman for an explanation, not simply to reject the opinions. *See Isernia v. Colvin*, 2015 WL 5567113 at *10 (E.D.N.Y. Sept. 22, 2015) ("The law is clear beyond cavil that where . . . a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion.") *see also Scott v. Berryhill*, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018) ("[T]he Commissioner's regulations indicate that the ALJ may recontact any 'medical source' where the evidence of record is incomplete or inconsistent, including where the evidence is 'ambiguous.'") (quoting 20 C.F.R. § 404.1520b(b)(2)(i)).

In sum, the ALJ used the opinion of a physician who only examined the paper record, as well as her own lay judgment, to discount the opinions of Segundo's treating physician. And the ALJ did not explicitly apply the *Burgess* factors in deciding to give the opinion of the treating physician less-than-controlling weight. Those errors require remand.[14]

---

[14] Segundo also contends that the ALJ "failed to abide by the directives of this Court and the Appeals Council." Docket Item 14-1 at 1. The Appeals Council's order instructed only that the ALJ conduct "further proceedings consistent with the order of the court," and that the ALJ "will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record[,] and issue a new decision." Docket Item 11 at 128. The Court's decision of June 28, 2019 did not instruct the Commissioner take any particular action on remand. *Id.* at 109-122. And the ALJ complied with the order of the Appeals Council. *See* Docket Item 10 at 1084 (transcript of hearing on March 2, 2020), Docket Item 11 at 220-21 (ALJ's request for medical expert opinion), Docket Item 10 at 1050-75 (ALJ's decision). So this Court does not agree that the ALJ erred in that regard.

The Court does observe, however, that the second ALJ to whom this case was assigned committed the same errors that the first ALJ made: rejecting the opinion of Segundo's long-time treating physician without good reason and based on the opinion of a physician who only reviewed the records and never examined Segundo. *See*

12

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Segundo's motion for judgment on the pleadings, Docket Item 14, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:         June 17, 2022
               Buffalo, New York


                                          /s/ Lawrence J. Vilardo
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE

---

Docket Item 11 at 117 ("The ALJ also rejected Dr. Hartman's opinions because they were inconsistent with the findings of [the consulting physician].  This also does not constitute a good reason for not giving controlling weight to the findings and opinions of plaintiff's long-time treating doctor.  [The consultant] has never met, interviewed, examined, or personally assessed plaintiff.").  The court criticized the first ALJ for substituting her "lay opinion for those of medical experts," *id.* at 119, and the second ALJ apparently thought that if she found a medical consultant to make the medical judgments that the first ALJ was criticized for making, that would resolve any issues.  But an ALJ cannot cede her authority to a physician who reviews records, nor can she accept that physician's opinion about a claimant's limitations at the expense of a treating physician's opinion without explicitly addressing the *Burgess* factors in detail and explaining why the treating physician's opinion was incorrect.  The failure to do that here requires remand.  And that is especially so because, as noted above, the treating physician's opinion was consistent with other opinions in the medical record and the ALJ did not address those consistencies as required by *Burgess* and *Estrella.*